UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-211-KSF

EVALENE SIZEMORE                                                                                          PLAINTIFF

v.                                                    **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                                                      DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Evalene Sizemore, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") based on disability. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and decided by the proper legal standards.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Sizemore filed her claim for SSI on April 5, 2004, alleging an onset date of March 2, 2003. After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on April 26, 2006. [TR 19-26]  Sizemore subsequently requested review by the Appeals Council. The Appeals Council denied her request for review on May 17, 2007. [TR 9-12]  Sizemore has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

1

At the time the ALJ rendered his decision, Sizemore was 48 years old. [TR 54] She has an eighth grade education. [TR 477] She has past relevant work experience as a babysitter, a cleaner in a car factory, and a phone service provider. [TR 91] Sizemore claims that she is disabled due to vision problems, depression, anxiety, and pain in her hands, back, neck, shoulders, and feet. [TR 100, 116, 480]

The medical record in support of her application for SSI benefits contains the following relevant evidence. Sizemore has a long history of vision problems; however, after treatment she has been able to obtain a driver's license and work as an on-line inspector. [TR 472-73] Approximately two months before Sizemore alleges she became disabled, Dr. Roy Varghese reported on January 6, 2003 that an X-ray showed she had degenerative arthritis. [TR 144] However, subsequent records from Dr. Varghese reveal she had no neurological deficits, had normal movement in her neck, and an X-ray of her cervical spine showed no evidence of dislocation. [TR 143]

On March 2, 2003, the day of the alleged onset of her disability, Sizemore reported to the emergency room at the University of Kentucky complaining that she had not slept for three to four days and accidentally overdosed on hydroxyzine. [TR 118] She further complained of auditory hallucinations and shaking spells. [TR 118-19] At the time of her admission to the hospital, Dr. Wisam Owais reported that she was depressed and nearly mute. She was treated with various medications and ultimately discharged on March 11, 2003. At the time of her discharge, Dr. Owais reported that Sizemore was stable and denied having any suicidal or homicidal thoughts, auditory or visual hallucinations, or shaking spells. [TR 121] Dr. Owais assigned her a Global Assessment

of Functioning, or GAF, score of 60.[1] Sizemore's physical examination, electroencephalogram, and MRI were also normal at the time of her discharge. [TR 127, 130].

Thereafter, Sizemore continued to be treated by Dr. Varghese, complaining of tremors and neck and back pain. [TR 142] However, on May 21, 2003, she reported being "very happy," "doing well," and that her medication was working. [TR141]  Similarly, on September 23, 2003, she told Dr. Varghese that she was doing well. [TR 139] Dr. Varghese found that her depression, anxiety, and high blood pressure were controlled and her extremities were normal. [TR 139] Dr. Varghese did not assess any physical limitations.

Other than a visit to the emergency room in May 2004 for a headache, Sizemore did not seek medical treatment against until 2005.  However, after the filing of her SSI application, she was sent to several consultative examinations.  On August 15, 2004, Sizemore was evaluated by Dr. Paige Powell, a consultative psychologist, who reported that her concentration appeared variable, but her attention, memory, speech flow, decision making, and thought content were normal. [TR 193] Although Dr. Powell noted that Sizemore's grooming was neglected, she was cooperative with a good mood, and had normal gait, posture, and motor activity. [TR 193].  Dr. Powell diagnosed major depressive disorder and post traumatic stress disorder with a GAF of 45. [TR 194] Dr. Powell did not place any limitations on Sizemore's ability to understand, remember, sustain attention, concentrate, and carry out instructions for simple tasks; however, she did find moderate limitations in her ability to tolerate stress and to respond appropriately to supervision, coworkers, and work

---

[1] A GAF score represents the clinician's judgment of the individual's overall level of functioning.  A score between 51 and 60 indicates only moderate symptoms are present, with a flat affect, circumstantial speech, and occasional panic attacks; the individual manifests moderate difficulty in social, occupational, or school settings.

pressure. [TR 194] Dr. Powell opined that her prognosis for improvement is fair if she receives mental health intervention. [TR 194-94]

Sizemore was also evaluated by Dr. Mark Burns, a consultative examiner, on August 15, 2004. Dr. Burns found Sizemore's neck was supple; she had normal extremities, joints, gross manipulation, and grip strength. He noted no evidence of scoliosis or back tenderness or spasms. [TR 197, 199] Furthermore, Dr. Burns found normal range of motion in Sizemore's back, shoulders, hands, knees, and perfect strength in her upper and lower extremities. [TR 198] Sizemore was able to perform straight leg raises in the sitting and supine position, knee squats, and heel, toe, and tandem walk without any assistive device. [TR 198] Dr. Burns did not assess any limitations in her ability to sit, stand, move about, lift, carry, handle objects, hear, see, speak, and travel. [TR 199]

Sizemore's medical records were reviewed by Dr. Stephen Scher, a state agency psychological consultant, on August 27, 2004. [TR 216-19] Dr. Scher opined that Sizemore had insignificant to moderate limitations in her ability to understand, remember, sustain concentration and persistence, interact socially, and adapt to various situations. [TR 216-17]

Despite her allegations of disabling pain and limitations, Sizemore worked in a sewing factory from December 2004 to February 2005 [TR 478-79], and part-time in a cookie factory from April 2005 until August 2005. [TR 179-80, 487] Then, just prior to her administrative hearing in November 2005, Sizemore complained to Dr. Anne Wasson of neck and back pain and high blood pressure. [TR 221] Dr. Wasson did not note any abnormal findings with Sizemore's back and neck. Approximately four months later, Sizemore reported to the hospital, complaining that she was having a nervous breakdown due to the recent deaths of her brother and friend. [TR 277] Sizemore was discharged the same day. The record indicates that although she was depressed and anxious, she was

oriented, cooperative, and had a normal affect. [TR 272]. Furthermore, she had a normal gait and was able to move all her extremities. [TR 272]

## II.    THE ADMINISTRATIVE PROCESS

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2)     If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4)     If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5)     Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc), he is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f).

Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The ALJ began his analysis at step one by determining that Sizemore has not engaged in any substantial gainful activity since her alleged onset date of March 2, 2003. [TR 21] At step two, the ALJ found that Sizemore suffers from the severe impairments of vision problems, chronic back pain, depression, and a posttraumatic stress disorder. [TR 22] Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments. [TR 22]

Based on the evidence in the record, the ALJ set out Sizemore's residual functional capacity. A residual functional capacity, or RFC, is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ determined that Sizemore has the RFC to perform a restricted range of light and/or sedentary work. Specifically, she can lift and carry no more than 20 pounds occasionally and 10 pounds frequently; sit, walk, or stand no more than 6 hours each in an 8 hour work day; and occasionally bend or stoop. She is further restricted to simple, routine, repetitive tasks; and has moderate restrictions in her ability to tolerate the stress and pressures in a work environment and respond appropriately to others in the workplace. Finally, because of her vision problems, the ALJ further restricted her to jobs involving no exposure to dangerous machinery or hazardous work conditions. [TR 22]

Based on this RFC, the ALJ found that Carter is unable to return to her past relevant work. [TR 291] At the fifth and final step, relying on the testimony of the Vocational Expert ("VE") and

taking into consideration Sizemore's age, educational background, past relevant work experience, and RFC, the ALJ found that Sizemore was capable of making a successful adjustment to work existing in significant numbers in the national economy and consequently, the ALJ determined that Sizemore was not disabled within the meaning of the Social Security Act. [TR 25-26]

Subsequent to the ALJ's April 2006 decision, Sizemore submitted additional evidence to the Appeals Council which indicated that she was admitted to a psychiatric hospital on two occasions. [TR 293-98, 382-83, 390] This Court is limited to reviewing the record before the ALJ unless the claimant can show pursuant to sentence six of § 405(g) that the evidence is new, that it is material, and that there is good cause for failure to incorporate it into the record at an earlier stage. 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). Sizemore has not raised a "sentence six" remand issue in her motion and therefore the Court will not consider this additional evidence.

The ALJ's decision that Carter is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on August 6, 2007. [TR 9] Carter has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III.  GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial

evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## IV. THE ALJ PROPERLY EVALUATED SIZEMORE'S SUBJECTIVE ALLEGATIONS OF DISABILITY

On appeal, Sizemore argues that the ALJ's determination that she is not disabled is not based on substantial evidence or decided by the proper legal standards. Specifically, Sizemore contends that the ALJ failed to accord proper weight to her own allegations of pain, symptoms, and limitations.

When evaluating a claimant's allegations of pain, the pertinent Social Security regulation is 20 C.F.R. § 404.1529, which provides as follows:

> (a) *General*. In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528(b) and (c). By other evidence, we mean the kinds of evidence described in §§ 404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect

> your activities of daily living and your ability to work. However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that your are disabled. . . .

20 C.F.R. § 404.1529(a). Based on this regulation, when a claimant attempts to establish a disability through subjective complaints of pain, she must produce "evidence of an underlying medical condition," and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id*., *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's credibility determinations related to a claimant's subjective complaints are entitled to great deference. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230 (1990).

In this case, the ALJ considered all of Sizemore's subjective complaints related to her pain. The ALJ's decision notes that Sizemore complains that she is disabled due to vision problems, chronic back pain, anxiety, and depression. She alleges constant pain in her upper back and neck that causes headaches and runs across her shoulders and down her hands. She complains that she cannot grip or hold on to anything, and that her hands lock up several times a day. Sizemore contends that she also has pain in her lower back that comes and goes and gets worse with sitting, standing, or walking. To treat her pain, Sizemore sees her doctor once every three months and uses a heating pad and takes over-the-counter medication for pain. She does not take prescription medication because it upsets her stomach and makes her break out into a sweat. With respect to her

9

mental health, Sizemore claims that she has had a nervous breakdown, and that she gets shaky, cries, and cannot think straight. [TR 23]

Reviewing Sizemore's medical records, the ALJ noted that although her medically determinable impairments could reasonably be expect to produce some symptoms, Sizemore's statements about the intensity, duration and limiting effects of these symptoms was not entirely credible. The ALJ's credibility determination was based in part on the fact that she is able to live alone and take care of her personal needs, including cooking and performing light household chores. Sizemore has testified that her hand pain does not prevent her from sometimes playing cards. Moreover, she is able to vacuum, dust, sweep, clean clothes and dishes, go to church, and take care of her grandchildren once a week. [TR 64, 66, 77] Moreover, the ALJ concluded that the objective medical record failed to support her disabling allegations. Specifically, with respect to her vision problems, the ALJ noted that the records reveal that she is able to work and see despite her vision problems. As to the pain she alleges in her back and neck, the ALJ reviewed the medical records from her treating physician, Dr. Varghese, and the consulting physician, Dr. Burns. Neither physician prescribed any limitations. Turning to her mental health complaints, the ALJ determined that Sizemore failed to seek any mental health treatment from the time of her hospitalization in 2003 until she was treated and released from the emergency room on March 9, 2006 for anxiety. The ALJ was impressed with the lack of mental health treatment sought or received by Sizemore and the consulting opinion from Dr. Powell, who only noted moderate impairment in Sizemore's ability to respond appropriately to coworkers, supervisors, and the stress and pressure of work. [TR 23-25]

Thus, the ALJ thoroughly stated his reasons for finding Sizemore's allegations not entirely credible, and the Court must give this finding great deference. *See Blacha*, 927 F.3d at 230.

Moreover, the objective medical record, including the opinions of Dr. Varghese, Dr. Burns, Dr. Powell, Dr. Owais and Dr. Scher, and Sizemore's own activities of daily living, are inconsistent with her subjective complaints. Accordingly, the ALJ did not err in rejecting Sizemore's complaints of disabling pain.

**V. CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that the decision of the Commissioner is **AFFIRMED** as it was supported by substantial evidence and was decided by proper legal standards.

This June 5, 2008.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**